UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SOLOMON SCHECHTER DAY SCHOOL OF BERGEN COUNTY and SINAI SPECIAL NEEDS INSTITUTE, INC.,<br><br>**Plaintiffs,**<br><br>v.<br><br>**C&A BENEFITS GROUP LLC d/b/a C&A BENEFITS GROUP AND BUSINESS SERVICES,**<br><br>**Defendant.** | Civ. No. 2:20-cv-1122 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

      This matter comes before the Court upon a motion to dismiss brought by Third-Party Defendant Phoenix Administrators, LLC d/b/a Performance Health ("Performance Health"), ECF No. 38, and a motion for judgment on the pleadings brought by Plaintiffs Solomon Schechter Day School of Bergen County and Sinai Special Needs Institute, Inc. (collectively, "Plaintiffs"), ECF No. 41. Having carefully considered the parties' submissions in support of and in opposition to each motion, the Court decides the motions on the papers without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Third-Party Defendant Performance Health's motion to dismiss is **DENIED** and Plaintiffs' motion for judgment on the pleadings is **GRANTED**.

    **I.    BACKGROUND**

      **A. The Parties**

      Plaintiffs are nonprofit private schools in New Jersey that provide self-funded health insurance plans ("the Plans") to their employees. Compl. ¶ 1, ECF No. 1. The Plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and name Plaintiffs as sponsors and fiduciaries of the Plans. Pls.' Countercl. ¶ 11, ECF No. 34. Defendant C&A Benefits Group LLC d/b/a C&A Benefits Group and Business Services ("C&A") is Plaintiffs' insurance broker. Compl. ¶ 1, ECF No. 1. Third-Party Defendant Performance Health was Plaintiffs' third-party administrator from mid-2018 to mid-2019 and processed the plan participants' health insurance claims. *Id.* ¶ 9.

### B. Plaintiffs' Complaint

To protect themselves against higher-than-anticipated insurance claims, Plaintiffs purchased stop-loss insurance, also known as excess insurance, in 2018 to cover claims exceeding a certain dollar amount. *Id.* The stop-loss insurance policy required Plaintiffs to submit Group Disclosure Forms about employees covered by the Plans who had incurred or could be reasonably expected to incur large medicals bills. *Id.* ¶¶ 2, 11. Plaintiffs completed the forms based on certain advice they received from C&A and relied on C&A to timely submit the forms to the stop-loss insurance carrier. *Id.* ¶¶ 14-21, 32-35.

During Plaintiffs' period of coverage under the stop-loss insurance policy, two of Plaintiffs' employees—F.E. and R.S.—incurred significant medical expenses. *Id.* ¶¶ 17, 36. The stop-loss insurance carrier denied coverage of their claims based on Plaintiffs' failure to timely submit the Group Disclosure Form and to disclose the employees' medical conditions. *Id.* ¶¶ 22-25, 36-38. Faced with paying thousands of dollars out-of-pocket to cover the denied claims, Plaintiffs initiated this litigation against C&A, arguing that C&A's erroneous advice on how to complete the Group Disclosure Forms and its failure to timely submit the forms caused the stop-loss insurance carrier to deny stop-loss coverage. *Id.* ¶ 27. Plaintiffs bring common law claims against C&A for breach of fiduciary duty, breach of contract, and professional malpractice. *Id.* ¶¶ 40-75.

### C. C&A's Third-Party Complaint

C&A filed an Answer in response to the Complaint, and filed a Third-Party Complaint against Performance Health, Plaintiffs' third-party administrator, seeking indemnification and contribution. ECF No. 8. C&A alleges it was Performance Health who wrongly advised Plaintiffs on how to complete the Group Disclosure Forms and who failed to timely submit the appropriate forms, resulting in the denial of stop-loss coverage. Third-Party Compl. ¶¶ 8-9, 13-14, ECF No. 8.

### D. Performance Health's Claims Against Plaintiffs

Performance Health filed an Answer in response to the Third-Party Complaint, along with its own claims against Plaintiffs. ECF No. 30. Denying any liability in this action, Performance Health argues that the Administrative Services Agreements governing its relationship with Plaintiffs require Plaintiffs to defend and indemnify Performance Health with respect to C&A's Third-Party claims, and failure to do so constitutes a breach of the Agreements. Performance Health's Compl. ¶¶ 3, 5, 7-17, ECF No. 30.

### E. Plaintiffs' Counterclaims Against Performance Health

Plaintiffs filed an Answer in response to Performance Health's claims, along with four counterclaims against Performance Health for violations of Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3),

and common law breach of contract, breach of fiduciary duty, and professional negligence. ECF No. 34.  Plaintiffs bring these counterclaims in their individual capacities and in their capacities as fiduciaries of the Plans.  Pls.' Countercl. ¶ 1, ECF No. 34.

When Plaintiffs established the Plans in mid-2018 and retained Performance Health as the third-party administrator, they entered into Administrative Services Agreements that would govern Performance Health's role as the third-party administrator of the Plans.  *Id.* ¶ 12.  Section 3.1 of the Agreements required Performance Health to "provide claims processing, claims payment and other administrative services," including: determining eligibility for coverage under the Plans; processing and/or denying claims for benefits in accordance with the terms of the Plans; paying covered claims from the Plans' funds; issuing explanations of benefits; maintaining records of coverage and claims history for Plan participants; submitting claims for stop-loss coverage and communicating with Plaintiffs' stop-loss insurer regarding claims submitted for coverage; and communicating with Plaintiffs as the Plan sponsors about Plan coverage and payments.  *Id.* ¶¶ 13, 14; Exs. E, F, Pls.' Countercl., ECF No. 38-1.  Section 3.1 further required Performance Health to perform these services "within the terms and conditions of the Plan and in accordance with industry standards."  Exs. E, F, Pls.' Countercl., ECF No. 38-1.  Other provisions within the Agreements covered Plan funding, Plaintiffs' duties, and indemnification.  *Id.*

From September of 2019 through September of 2020, Plaintiffs received a series of correspondence from Performance Health that led Plaintiffs to believe Performance Health was mismanaging the Plans and failing to fulfill its duties under the Administrative Services Agreements.  Pls.' Countercl. ¶¶ 19-31, ECF No. 34.  Specifically, Performance Health was improperly denying claims relating to F.E. and R.S. as ineligible for coverage under the Plans solely because the stop-loss insurer denied stop-loss coverage on F.E. and R.S.'s claims.  *Id.* ¶¶ 19, 20.  Performance Health then stated that it would neither deny nor approve any submitted claims under the Plans once the stop-loss insurer denied stop-loss coverage.  *Id.* ¶¶ 20, 26.  Simultaneously, for other plan participants, Performance Health did not submit to the stop-loss insurer medical claims above the threshold amount for stop-loss coverage, but rather used the Plans to pay those claims.  *Id.* ¶ 29.  This resulted in thousands of dollars of unpaid medical claims for plan participants like F.E. and R.S., as well as the Plans being underfunded, which Performance Health then expected Plaintiffs to reimburse.  *Id.* ¶¶ 19, 20, 27.  Despite Plaintiffs' efforts to obtain information from Performance Health about the status of F.E.'s and R.S's medical claims and, generally, the status of all claims for benefits, Performance Health has provided limited information, preventing Plaintiffs from ensuring its plan participants have been and are being properly covered under the Plans.  *Id.* ¶¶ 24, 27.

### F.  The Parties' Motions

In lieu of filing an Answer in response to Plaintiffs' counterclaims, Performance Health filed the instant motion to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6).  ECF No. 38.  Plaintiffs oppose the motion.  ECF No. 40. Performance Health did not file a reply.

Plaintiffs thereafter filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on Performance Health's claims for defense and indemnification and breach of contract.  ECF No. 41.  Performance Health opposes the motion, ECF No. 45, and Plaintiffs filed a reply, ECF No. 47.  Both motions are ripe for resolution.

## II.     LEGAL STANDARD

"A defendant may move to dismiss a complaint or parts of a complaint before or after filing an answer." *Hackensack Riverkeeper, Inc. v. Delaware Ostego Corp.*, 450 F. Supp. 2d 467, 484 (D.N.J. 2006); *see* Fed. R. Civ. P. 12(b)(6) and (c).  A motion made before an answer is filed is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and a motion made after an answer is filed is a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  *Hackensack Riverkeeper, Inc.*, 450 F. Supp. 2d at 484.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well-pleaded allegations in the complaint as true, view them in the light most favorable to the plaintiff, and determine whether the plaintiff has pleaded sufficient factual matter to show that the claim is facially plausible.  *See Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citations and quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

This same standard is applied to a Rule 12(c) motion for judgment on the pleadings when the motion is based on the defense that the plaintiff has failed to state a claim. *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017).  "A motion for judgment on the pleadings should be granted if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Id.* at 418 (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).  Just as with a Rule 12(b)(6) motion to dismiss, a court evaluating a Rule 12(c) motion "must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Id.*

## III.    ANALYSIS

### A. Performance Health's Rule 12(b)(6) Motion

The Court turns first to Performance Health's motion to dismiss Plaintiffs' counterclaims under Rule 12(b)(6).

### 1.  ERISA Counterclaim

Performance Health argues that Plaintiffs' counterclaim for violations of ERISA Section 502(a)(3) is a claim for breach of fiduciary duty and must be dismissed because Performance Health is not a fiduciary as a matter of law.[1]  P.H. Br. at 10, ECF No. 38.[2]

Section 502(a) is ERISA's civil enforcement provision.  29 U.S.C. § 1132(a).  It describes the causes of action and the universe of plaintiffs authorized to bring such actions under the statute.  *Id.*  Section 502(a)(1) authorizes plan participants and beneficiaries to bring suit to recover benefits and enforce their rights due under the terms of a plan.  *Id.* § 1132(a)(1).  Section 502(a)(2) authorizes the Secretary of Labor, plan participants, beneficiaries, and fiduciaries to bring suit for breach of fiduciary duties.  *Id.* § 1132(b)(2).  Then there is Section 502(a)(3), which the Supreme Court has explained acts as a "catchall" provision or "safety net, offering appropriate equitable relief for injuries caused by violations that [Section] 502 does not elsewhere adequately remedy."  *Varity Corp v. Howe*, 516 U.S. 489, 512 (1996).  Section 502(a)(3) authorizes a suit:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

It is under this third subsection that Plaintiffs, as fiduciaries of their Plans, bring their ERISA counterclaim against Performance Health for improper denial of claims in violation of the Plans' terms; failure to timely determine and pay claims as required under ERISA and the plans; failure to obtain reimbursement for the use of plan assets from the stop-loss insurance carrier; and failure to provide plan-related information to Plaintiffs.  Pls.' Countercl. ¶¶ 34-35, ECF No. 34 .  Performance Health does not argue that Plaintiffs fail to adequately plead a Section 502(a)(3) claim, nor does it argue that Plaintiffs seek something other than appropriate equitable relief under this provision.  Performance Health

---

[1] In considering Performance Health's arguments, the Court accepts as true the facts alleged in Plaintiffs' counterclaims and draws all reasonable inferences in favor of Plaintiffs.  *See, e.g.*, *ADP, LLC v. Ultimate Software Group, Inc.*, No. 16-8664 (KM), 2018 WL 1151713, at *2 (D.N.J. Mar. 5, 2018) ("In considering a motion [to dismiss counterclaims] under Rule 12(b)(6), I am confined to the allegations contained within the counterclaims, with some narrow exceptions.").

[2] The Court will refer to Performance Health as "P.H." in citations to the briefing.

argues solely that Plaintiffs cannot maintain a Section 502(a)(3) claim against it because it is not a fiduciary as defined by ERISA.  P.H. Br. at 10-13, ECF No. 38.

Performance Health is correct that a plaintiff bringing a claim for breach of fiduciary duty under ERISA must plausibly allege that the defendant was acting as a fiduciary. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also IJKG Opco LLC v. Gen. Trading Co.*, No. 17-6131 (KM), 2020 WL 1074905, (D.N.J. Mar. 6, 2020).  But, as Plaintiffs assert, they are not alleging breach of fiduciary duty under Section 502(a)(3).[3]  Pls.' Opp'n Br. at 7, ECF No. 40.  As the Supreme Court explained in *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246-47 (2000), Section 502(a)(3) describes "the universe of *plaintiffs* who may bring certain civil actions," but it "admits of no limit . . . on the universe of possible defendants" subject to Section 502(a)(3) liability. (emphasis in original).  Rather, the focus of Section 502(a)(3) "is on redressing the '*act or practice* which violates any provision of [ERISA Title I]'" or the terms of the plan. *Harris Trust*, 530 U.S. at 246 (quoting 29 U.S.C. § 1132(a)(3)) (emphasis in original).  Plaintiffs, therefore, are not necessarily required to allege that Performance Health is a fiduciary under ERISA.  Absent any argument from Performance Health that Plaintiffs have otherwise failed to adequately plead a claim under Section 502(a)(3), Plaintiffs' ERISA counterclaim shall proceed.

### 2. Breach of Contract, Breach of Fiduciary Duty, and Professional Negligence Counterclaims

Performance Health next argues that Plaintiffs' counterclaims for common law breach of contract (the Administrative Services Agreements), breach of fiduciary duty, and professional negligence must be dismissed because they are based on conduct governed by the Plans and, therefore, are expressly preempted by ERISA.  P.H. Br. at 14, ECF No. 38.

"ERISA possesses 'extraordinary pre-emptive power.'" *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293 (3d Cir. 2014) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  Its express preemption provision, Section 514(a), "provides that ERISA's regulatory structure 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [subject to ERISA].'" *Id.* (quoting 29 U.S.C. § 1144(a)).  State law, which includes state common law, "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 293-94 (citation and quotation marks omitted).  "Therefore, a state law claim relates to an employee benefit plan if 'the existence of an ERISA plan [is] a critical factor in establishing liability' and the 'court's inquiry would be directed to the plan.'" *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783 (JMV), 2020 WL 1983693, at *4 (D.N.J. Apr. 27, 2020) (quoting *1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992)).

---

[3] Plaintiffs make no argument as to whether Performance Health is or is not a fiduciary under ERISA.  *See* Pls.' Opp'n Br. at 7-11, ECF No. 40.

Here, Plaintiffs' common law counterclaims are all premised on essentially the same conduct underlying the ERISA Section 502(a)(3) counterclaim: that Performance Health failed to "maintain and provide Plaintiffs with information regarding claims status and payment in a timely manner," failed "to process and make the required claims determinations in a timely manner under the terms of the Plans and industry standards," and failed "to submit and ensure proper payment on stop-loss claims." Pls.' Countercl. ¶¶ 40, 46, 51, ECF No. 34. In other words, as currently pleaded, Plaintiffs' counterclaims seek to enforce the same obligations under both ERISA and common law. One difference between the counterclaims, however, is that Plaintiffs bring the ERISA counterclaim in their capacity as fiduciaries and appear to bring the common law counterclaims in their individual capacities to address their own injuries for breaches of the Administrative Services Agreements, namely the excess costs Plaintiffs incurred from Performance Health's failure to recover under the stop-loss policy, along with Plaintiffs' continued inability to obtain information from Performance Health. As one Court in this District has noted:

> [A] plan sponsor owes certain fiduciary obligations to the Plan Beneficiaries, and there are circumstances where it may act in a fiduciary capacity and seek to enforce the rights of [those] Beneficiaries. On the other hand, [the plan sponsor] has interests of its own, and it may also act to protect those interests.

*Ceres Terminal, Inc. v. United Healthcare Ins. Co.*, No. 06-254, 2006 WL 8457649, at *5 (D.N.J. May 18, 2006) (quoting *Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003)).

At this early stage of the case, where Performance Health has yet to challenge the viability of Plaintiffs' Section 502(a)(3) claim, the Court will not foreclose Plaintiffs from pursuing relief under the common law counterclaims, but only to the extent that Plaintiffs bring those counterclaims in their individual capacities to address their own injuries. This decision is without prejudice to Performance Health's right to renew its preemption argument on motion for summary judgment after the conclusion of discovery, at which time both the parties and the Court will have the benefit of a developed record to determine whether Performance Health had obligations to Plaintiffs independent of the Plans. Accordingly, the Court will deny Performance Health's motion to dismiss.

### B. Plaintiffs' Rule 12(c) Motion

The Court turns next to Plaintiffs' motion for judgment on the pleadings under Rule 12(c) on Performance Health's claims for defense and indemnification against C&A's

third-party claims.[4]  Performance Health also claims that Plaintiffs' refusal to defend and indemnify constitutes a breach of the Administrative Services Agreements.  The issue presented is a straightforward one.

Section 7.1 of the Administrative Services Agreements contains an indemnification clause that reads:

> Subject to the limitations contained in this Agreement, the parties agree to indemnify and [*sic*] each other from any liabilities, claims, demands, penalties, including costs, expenses and reasonable attorney's fees that may be made by any third party *resulting from the indemnifying party's acts or omissions* related to this Agreement.

Exs. E, F, Pls.' Countercl. ECF No. 38-1 (emphasis added).  Under this clause, Performance Health is entitled to defense and indemnification from Plaintiffs if C&A's claims against it "result[] from [Plaintiffs'] acts or omissions related to" the Administrative Services Agreements.  C&A's claims against Performance Health do not allege that *Plaintiffs* acted negligently when completing the Group Disclosure Form, but that *Performance Health* acted negligently by providing Plaintiffs with poor advice and failing to timely submit the Group Disclosure Forms.  *See* Third-Party Compl. ¶¶ 9, 14, ECF No. 8.  It is, therefore, clear from a plain reading of C&A's Third-Party Complaint that it is Performance Health's own conduct—not Plaintiffs' conduct—that gives rise to C&A's claims.  Consequently, the indemnification clause does not apply and dismissal of Performance Health's claims for defense and indemnification and breach of contract is warranted.  The Court will grant Plaintiffs' motion for judgment on the pleadings.

### IV.     CONCLUSION

For the reasons stated above, Performance Health's motion to dismiss under Rule 12(b)(6) is **DENIED** and Plaintiffs' motion for judgment on the pleadings under Rule 12(c) is **GRANTED**.  An appropriate Order accompanies this Opinion.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date:  April 22, 2021**

---

[4] In considering Plaintiffs' arguments, the Court accepts as true the facts alleged in Performance Health's claims against Plaintiffs and draws all reasonable inferences in favor of Performance Health.  *See, e.g.*, *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).